IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-00607-D

|  |  |
|---|---|
| **John William Tew, II,**<br><br>      Plaintiff,<br><br>v.<br><br>**Carolyn Colvin**, Acting Commissioner of<br>Social Security,<br><br>      Defendant. | **Memorandum & Recommendation** |

Plaintiff John William Tew, II instituted this action on October 9, 2014 to challenge the denial of his application for social security income.  Tew claims that Administrative Law Judge Edward Bowling erred in assessing his Residual Functional Capacity ("RFC") and failed to address his Global Assessment of Functioning ("GAF") scores. Both Tew and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment in their favor. D.E. 19, 25.

After reviewing the parties' arguments, the court has determined that ALJ Bowling reached the appropriate decision. There is substantial evidence to support ALJ Bowling's determination of the RFC assessment, his consideration of Tew's GAF scores, and his step five findings identifying other jobs that Tew could perform. Therefore the undersigned magistrate judge recommends[1] that Tew's Motion for Summary Judgment be denied, that Colvin's Motion

---

[1] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation.  28 U.S.C. § 636(b).

for Judgment on the Pleadings be granted, and that the Commissioner's final decision be affirmed.

## I. Background

On June 17, 2010 and July 22, 2010, respectively, Tew filed applications for supplemental security income and disability insurance benefits on the basis of a disability that allegedly began on November 7, 2005. After his claims were denied at both the initial stage and upon reconsideration, Tew appeared before ALJ Bowling for a hearing to determine whether he was entitled to benefits. After the hearing, ALJ Bowling determined that Tew was not entitled to benefits because he was not disabled. Tr. at 16–26.

In his decision, ALJ Bowling found that Tew had the following severe impairments: hypertension, degenerative joint disease of the left shoulder, bipolar disorder, substance abuse, personality disorder, and fractured upper extremity and lower extremity (based on his history because the file lacked such evidence). *Id*. at 18. ALJ Bowling also found that his impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* at 19. ALJ Bowling determined that Tew had the RFC to perform medium work with the following limitations: he can perform only occasional overhead lifting with the dominant upper extremity; he cannot climb ropes, ladders, or scaffolds; he is limited to simple, routine, repetitive tasks in that he can apply common sense understanding to carry out oral, written, and diagrammatic instructions; he can have frequent contact with coworkers and occasional contact with the public; and should avoid concentrated exposure to hazards. *Id.* at 20. ALJ Bowling also concluded that Tew was unable to perform any past work but that, considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he was capable of performing. *Id.* at 24–26. These jobs included: kitchen helper, cleaner, and packager.

*Id.* at 25–26. Thus, ALJ Bowling found that Tew was not disabled. *Id.* at 26. After unsuccessfully seeking review by the Appeals Council, Tew commenced this action and filed a complaint pursuant to 42 U.S.C. § 405(g) on October 9, 2014. D.E. 10.

## II.      Analysis

### A.      Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B.      Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's

impairment does not meet or equal a listed impairment then, at step four, the claimant's RFC is assessed to determine whether plaintiff can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Residual Functional Capacity

Tew first contends that ALJ Bowling erred in assessing his RFC. He argues that ALJ Bowling disregarded his limitations found by mental health examiners, evidence of his psychiatric hospitalizations, and the vocational evidence. He also maintains that the vocational evidence contradicts the RFC finding for medium work with additional limitations. The Commissioner maintains that substantial evidence supports ALJ Bowling's RFC assessment.

An individual's RFC is the capacity which the individual possesses despite the limitations caused by her physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96–8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96–8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). An ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately

4

discussed by the ALJ and the ALJ also discusses the claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96–8p, 1996 WL 374184, at *7.

Furthermore, when determining a claimant's RFC, the ALJ may assess a claimant's credibility about subjective complaints regarding pain or other problems. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant [testifying about pain], the ALJ's observations concerning these questions are to be given great weight."). Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig v. Chater*, 76 F.3d 585, 93–94 (4th Cir. 1995). First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 96–7p, 1996 WL 374186, at *2 (July 2, 1996); *Mines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes this first determination, he must then evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 96–7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564–65. Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." S.S.R. 96–7p, 1996 WL

5

374186, at *3 (showing the complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence. *See Craig*, 76 F.3d at 595–96. But neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96–7p, 1996 WL 374186, at *3; *see also Taylor v. Astrue*, No. 5:10–CV–263–FL, 2011 WL 1599679, at *4–8 (E.D.N.C. Mar. 23, 2011) (finding the ALJ properly considered the entire case record to determine that claimant's subjective complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

Consulting examiners Elisabeth Hyde, M.A. and E.J. Burgess, Psy.D., examined Tew on September 28, 2010. Tr. at 531–35. These examiners noted that Tew expressed doubt that he could maintain sobriety and that he had little motivation to change. *Id.* at 535. They concluded that Tew was capable of understanding, retaining, and following directions; capable of sustaining adequate attention to perform routine, repetitive tasks; and capable of working at an adequate pace. *Id.* They also opined that Tew may have difficulty interacting appropriately with coworkers and supervisors due to poor anger management skills. *Id.* Tew also cites a February 7, 2012 vocational assessment which recommended part-time work with a regular schedule, frequent breaks, and flexible work. *Id.* at 354–74.

Despite Tew's argument that ALJ Bowling failed to acknowledge the consulting examiners' findings, his decision indicates not only that he considered the entire record, *id.* at 18, but also that he specifically discussed this assessment, *id.* at 23. ALJ Bowling misidentified the names of the consulting examiners but referenced their findings by the correct exhibit number, 7F, in the record. *Id.* at 23–24. ALJ Bowling's decision reflects that he gave some weight to the

6

findings that Tew appeared capable of understanding, retaining, and following directions; sustaining adequate attention to perform routine, repetitive tasks; and working at an adequate pace. *Id.* at 23. ALJ Bowling also referenced their finding that Tew may have difficulty interacting appropriately with coworkers and supervisors. *Id.* ALJ Bowling concluded that the limitation to simple tasks with limited contact accommodated these assessed restrictions. *Id.* at 23–24. ALJ Bowling also noted that mental health treatment records from Daymark Recovery Services indicated that Tew was non-complaint with medications and that he was not fully credible. *Id.* at 23. Thus, ALJ Bowling addressed the consultative examiners' findings and weighed them as required.

ALJ Bowling also discussed the February 7, 2012 Vocational Evaluation Report by Skylar DePedro, M.A. *Id.* at 21, 24. As a vocational evaluator, DePedro's opinion qualifies as an "other source" as opposed to an "acceptable medical source." 20 C.F.R. § 1513. The same factors used to determine the weight to be accorded the opinions of physicians and psychologists (and other "acceptable medical sources") apply to the opinions of providers who are deemed to be at a different professional level (or so-called "other sources"). *See* S.S.R. 06–03p, 2006 WL 2329939, at *2, 4 (Aug. 9, 2006); *see also* 20 C.F.R. §§ 404.1527(c) (evaluation of medical opinions), 416.927(c) (same), 404.1513(d) (partial listing of "other sources"), 416.913(d)(1) (same).

Here, ALJ Bowling found that Tew was less than credible inasmuch as the statement he gave in the vocational evaluation conflicted with other evidence in the record. For example, Tew reported to the vocational evaluator that he could lift up to 50 pounds and stated he had a wealth of information. Tr. at 354–74. His hearing testimony indicated that he could not lift two gallons of milk. *Id.* at 53–54. Additionally, the consulting examiners noted that his fund of information

7

was below average. *Id.* at 534. Despite the findings in the vocational evaluator's report, Tew stated that he had been working and would like to secure employment as a stocker in a grocery store or retail business, or to receive training to become an accountant. *Id.* at 355. These statements contradict his hearing testimony that he is unable to work.

Moreover, the vocational evaluator based the assessment, in part, on Tew's statements of pain and his motivation to work. However, ALJ Bowling noted that the medical evidence found an essentially normal physical examination in November 2005, normal range of motion ("ROM") in all extremities in April 2011, no functional limitations assessed by consultative examiner Dr. John Midgley, and that consultative psychological examiners found Tew had little motivation. Accordingly, the findings of the vocational evaluator are contradicted by other evidence of record and, therefore, the ALJ was not required to adopt the suggested recommendations found in the Vocational Evaluation Report and incorporate them into the RFC.

Tew's argument essentially boils down to the contention that ALJ Bowling incorrectly considered the evidence before him. Although Tew may disagree with the determinations made by ALJ Bowling after weighing the relevant factors, it is not the role of this court to re-weigh conflicting evidence or substitute its judgment for that of the Commissioner. *Craig*, 76 F.3d at 589; *see also Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). For these reasons, Tew has failed to demonstrate that ALJ Bowling erred in his RFC determination.

### D. Global Assessment of Functioning scores

Tew also argues that ALJ Bowling erred by considering his consistently low GAF scores. Specifically, he contends that ALJ Bowling failed to weigh or mention several of the scores that fell below 50. The Commissioner asserts that ALJ Bowling properly considered the range of

Tew's GAF scores contained in the record. The court determines that the ALJ's determination was without error.

The GAF scale measures a person's overall psychological, social, and occupational functioning. Am. Psych. Assn., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) ("DSM–IV–TR"). The relevant GAF scores assigned to Tew ranged from 43 to 69. A GAF score from 41–50 reflects "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting)" or "any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* A score from 51–60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks)" or "moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.* Further, a score from 61–70 suggests "some mild symptoms (e.g., depressed mood and mild insomnia)" or "some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.*

ALJ Bowling noted that Tew's GAF scores ranged from a low of 43 in October 2008 to a high of 65 in February of 2009. Tr. at 22. Tew maintains that he had the following additional scores: 46 in January 2011, 48 in January 2012, and a number of scores of 50 or below from Daymark Recovery Services and consulting psychological examiners. Although he did not mention every GAF score, ALJ Bowling properly considered Tew's GAF scores along with all of the record evidence.

The SSA has stated that GAF scores "[do] not have a direct correlation to the severity requirements in [the social security] mental disorders listings." *Wiggins v. Astrue*, No. 5:11–CV–85–FL, 2012 WL 1016096, at *8 (E.D.N.C. Feb. 2, 2012) (unpublished) (quotations and citations

omitted). Moreover, GAF scores themselves are not necessarily indicative of a claimant's mental disability. *See Oliver v. Comm'r of Soc. Sec.*, 415 F. App'x 681, 684 (6th Cir. 2011) ("A GAF score is thus not dispositive of anything in and of itself" and has no direct legal or medical correlation to the severity requirements of social security regulations.); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009) (a GAF score is "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning."); *Leovao v. Astrue*, No. 2:1-cv-54, 2012 WL 6189326, *5 (W.D.N.C. Nov. 14, 2012) (a GAF score is intended to be used to make treatment decisions) (citing *Wilkins v. Barnhart*, 69 F. App'x. 775, 780 (7th Cir. 2003)); *Fowler v. Astrue*, No, 1:10-cv-273, 2011 WL 5974279 * *3 (W.D.N.C. Nov. 29, 2011) (a GAF score is only a "snapshot of functioning at any given moment."); *Melgarejo v. Astrue*, No. 08–3140, 2009 WL 5030706, at * 2 (D. Md. Dec. 15, 2009) ("[A] GAF score is not determinative of whether a person is disabled . . . [and] [t]he Social Security Administration does not endorse the use of the GAF in Social Security and SSI disability programs, and it does not directly correlate to the severity requirements in the mental disorders listings."). "[T]he failure to reference a [GAF] score is not, standing alone, sufficient ground to reverse a disability determination." *Wiggins,* 2012 WL 1016096, at *8 (quotations and citations omitted).

Here, ALJ Bowling accounted for Tew's well-established mental deficits and resulting limitations in the RFC, which limited him to simple, routine, repetitive tasks, using common sense understanding to carry out oral, written, and diagrammatic instructions and limited contact with the public. Tr. at 20. He also referenced the range of GAF scores contained in the record. Accordingly, he properly considered this evidence. Thus, the undersigned determines that ALJ

Bowling did not err in evaluating Tew's GAF scores. His argument on this issue, therefore, lacks merit.

### III.    Conclusion

For the forgoing reasons, the court recommends that Tew's Motion for Summary Judgment (D.E. 19) be denied, that Colvin's Motion for Judgment on the Pleadings (D.E. 25) be granted, and that the Commissioner's final decision be affirmed.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the**

**Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: August 11, 2015.

ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE